JACOB FRANTZ, for the use of JOHN GARBERICH, *against* PHILIP BROWN.

1pw257<br>165 441

One about to take an assignment of a bond, is bound to enquire into every circumstance that might be set up against payment of any part of the debt, and having failed to do so, he stands exactly in the place of the obligee.

It is competent therefore, for an obligor to set up as a defence to the payment of his bond in the hands of an assignee, a parol agreement between him and the obligee, made after the bond was executed, but before it was assigned, that in a certain event which might and did happen after the assignment, the bond was not to be paid.

In a case where chancery would enjoin an obligee in a bond or his assignee from proceeding at law, while the obligor remains a loser or in jeopardy as a surety, evidence is admissable to enable the jury to produce the same result by means of a conditional verdict.

APPEAL, by the defendant, from the Circuit Court of Lebanon county.

An action of debt on bond was brought by *Jacob Frantz* for the use of *John Garberich,* against *Philip Brown.* The plaintiff gave in evidence the bond of *Philip Brown* to *Jacob Frantz,* for eight hundred dollars, upon which suit was brought, dated the 29th March, 1819, payable on the first of May, 1823, with the equitable assignment thereon, to *John Garberich,* dated fifteenth April, 1820. The defendant then read a notice of the special matter, upon which he intended to rely as a defence, which was in substance this.

That on the 10th of October, 1818, an article of agreement was entered into between *Frantz* and *Brown,* by which *Frantz* sold a tract of land to *Brown,* for two thousand two hundred pounds; seven hundred pounds whereof was to be paid upon the execution of the contract, and three hundred pounds a year thereafter, till the whole should be paid: that bonds were given by *Brown* to *Frantz,* for the said annual payments, upon one of which this suit is brought. That about eight days after the bonds were executed and delivered to

(Jacob Frantz, for the use of John Garberich, *v.* Philip Brown.)

*Frantz,* he bought a tract of land and mills from *Adam Brechtbill,* for ten thousand six hundred and sixty-six dollars and sixty-seven cents; four thousand two hundred and sixty-six dollars, and sixty-seven cents of which he paid in hand, and agreed to give sixteen bonds, with security, for four hundred dollars each, payable annually, for the residue. That on the 6th April, 1819, *Frantz* called on *Brown* to become his security, in the sixteen bonds to *Brechtbill,* for four hundred dollars each, which *Brown* at first refused to do; but upon its being agreed by *Frantz,* that if *Brown* would sign, as his security, the bonds to *Brechtbill,* the bonds which he, *Brown,* had given to *Frantz* on the 29th March, 1819, for the land purchased, should be his security: that if *Brown* was at any time obliged to pay any of the bonds given by them to *Brechtbill,* that so much should be deducted out of his bonds to *Frantz,* and that *Brown* should not be called upon to pay his bonds to *Frantz,* until *Frantz* had paid his bonds to *Brechtbill;* on these conditions *Brown* signed the bonds, as security of *Frantz* to *Brechtbill.* That *Frantz* became unable to pay his bonds to *Brechtbill,* and that *Brown* was obliged to pay them, and had paid the first eight bonds in full, and the ninth in part. That *Frantz* became insolvent on or before the 10th April, 1821, and that *Brown* will be obliged to pay all the bonds to *Brechtbill;* as they become due.

The defendant having given in evidence, the agreement between *Frantz* and *Brechtbill,* as mentioned in the notice of special matter, and the deed in pursuance thereof, dated 6th April, 1819; offered in evidence three bonds of the same date, *Jacob Frantz* and *Philip Brown,* to *Adam Brechtbill,* for four hundred dollars each, payable on the 1st of May, 1825, 1826 and 1827, together with the parol agreement between *Frantz* and *Brown,* as set out in the notice of special matter.

This was objected to by the plaintiff, who in support of his objection showed, that this suit was brought on the 10th November, 1824. The evidence was rejected by the court.

The defendant then offered in evidence, the prior bonds, *Jacob Frantz* and *Philip Brown,* to *Adam Brechtbill,* four in number; the first payable on the first day of May, 1820, and the last on the first day of May, 1823. Objected to by the plaintiff, inasmuch as these bonds had been credited in a former suit, *Jacob Frantz,* for the use of *Philip Stine,* v. *Philip Brown;* and offered a credit for the amount found by the jury, in said suit, as over paid by the defendant, to wit: two hundred and two dollars and thirty-eight cents—the defendant then agreed that the former trial shall settle the amount over paid on the three first bonds.

The defendant then offered in evidence the bond of *Jacob Frantz* and *Philip Brown,* to *Adam Brechtbill,* payable on the first day of May, 1824, with proof, that it was paid on the day it fell due, or before: objected to by the plaintiff, on the ground, that notice of the assign-

(Jacob Frantz, for the use of John Garberich, *v.* Philip Brown.)

ment of the bond, upon which the present suit is brought, was brought home to *Philip Brown*, before the bond offered in evidence became due, or was paid; and gave in evidence a suit brought by the plaintiff, against the defendant, in Dauphin county, to recover the amount of the present bond, the 26th day of January, 1824, process served and bail given, and discontinued on the 9th day of November, 1824, the day before this suit was brought. Objections overruled, and evidence admitted; excepted to by the plaintiff.

*John Harrison* was then called by the defendant. I was one of *Jacob Frantz's* assignees; assignee deed, dated the 10th day of April, 1821; sold his goods, January, 1822; I have always understood he was poor; we were not able to pay his debts; I don't know what his circumstances were in 1824.

*Jacob Frantz* was called by the defendant: I did not pay the bond of 1824, which *Brown* and I gave to *Adam Brechtbill* : I was not able to pay it then, nor am I now.

A verdict was rendered for the plaintiff, for three hundred and fifty-one dollars and fifty-eight cents.

The plaintiff prayed the court to grant a new trial for three reasons, the first of which is alone material.

Because the court erred in receiving in evidence the bond of *Jacob Frantz*, and *Philip Brown*, to *Adam Brechtbill*, dated 6th April, 1819, for four hundred dollars, payable 1st May, 1824, and in deciding that the same was a legal defalcation against *John Garberich*, for whose use this suit was brought.

The defendant prayed the court to grant a new trial, and assigned four reasons therefor, all of which amounted to but one.

Because the court rejected the evidence of the payment of the bonds of *Frantz* and *Brown*, to *Brechtbill*, payable 1st May, 1825, 1826, 1827, 1828, and part of the one of 1829, together with parol evidence of the agreement between *Frantz* and *Brown*, at the time they were executed.

The court overruled both the motion of the plaintiff, and of the defendant : and entered judgment upon the verdict, from which decision both parties appealed.

In this court the cause was argued by

*Montgomery* and *Norris*, for plaintiff.

*Weidman* and *Elder*, for defendant.

For the plaintiff, it was contended, that the court was right in rejecting the evidence of the parol agreement between *Frantz* and *Brown:* a contract cannot rest partly in writing and partly in parol, such evidence was rejected in *Davis* v. *Barr*, 9 *Serg. & Rawle*, 141. It is against the legal effect of the instrument; and the assignee not having reason to suspect its existence, is not bound to enquire for it from the obligor. An agreement not to enter up a bond, was

34

(Jacob Frantz, for the use of John Garberich, *v.* Philip Brown.)

held not to bind, even the original parties. Undoubtedly the assignor could not have released after the assignment, in consideration of this previous liability ; and what can not be done directly, cannot be done indirectly. *Andrews* v. *Beeker,* 1 *Johns. Cas.* 411. *Little- field* v. *Story,* 3 *Johns. Rep.* 425. *Wardell* v. *Eden,* 2 *Johns. Cas.* 121. *Raymond* v. *Squire,* 11 *Johns. Rep.* 47. *Bates* v. *N. Y. Ins. Co.* 3 *Johns. Cas.* 238. Want of notice to the assignee is material ; for after that, the interest of the assignor is divested, even as regards the obligor, and all relation between the original parties ceases. Nothing but defalcation or an equity arising out of the concoction of the debt can be urged against an assignee. *Davis* v. *Barr,* 9 *Serg. & Rawle,* 141. *Turlin* v. *Bonson,* 1 *Peer Williams,* 495. *Cook* v. *Ambrose, Addis. Rep.* 323. We are purchasers for a valuable consideration, without notice of this germ of incipient equity.

There was error in admitting the evidence of set off of the amount of the bond of 1824, and in charging the jury that they were bound to allow it. *Jenkins* v. *Brewster,* 14 *Mass.* 291. *Jones* v. *Witter,* 13 *Mass.* 305.

The counsel for defendant were requested by the court, to confine their argument to the point on which the defendant appealed.

The evidence of the agreement between *Frantz* and *Brown,* should have been received for the purpose of raising an equitable defence, independent of defalcation, 1 *Madd. Chan.* 154, an assignee takes subject to every equity, *Wheeler* v. *Hughes,* 1 *Dal.* 23. *Run- dell* v. *Ettwein,* 2 *Yeates* 23. *Mann* v. *Dungan,* 11 *Serg. & Rawle,* 75. Every *defence* must be let in ; *Solomon* v. *Kimmel,* 5 *Bin.* 234. *Bury* v. *Hartman,* 4 *Serg. & Rawle,* 175. *Gochenaur* v. *Cooper,* 8 *Serg. & Rawle,* 203. *Morrison* v. *Moreland,* 15 *Serg. & Rawle,* 61. *Roas- set* v. *The Ins. Co. of North Amer.* 1 *Bin.* 433. The defalcation act expressly authorises the giving of a *bargain* in evidence, to show the amount actually and equitably due. Here there is certainly an available equity between the original parties, which is sanctioned by all the authorities, as being also available against the assignee .

The opinion of the court was delivered by

GIBSON, C. J.—Evidence of the agreement between *Frantz* and *Brown,* at the time of executing their bonds to *Brechibill,* was excluded against the bent of the judge's inclination, on the authority of *Davis* v. *Barr,* 9 *Serg. & Rawle,* 137, by which he thought his judgment was controlled. It is there stated, that as regards transactions between the original parties, the assignee is to be affected only by defalcation or want of consideration : a construction which is found to be too narrow for the spirit of the act on which the question turns. In that case the agreement did not touch the question of liability; and as the assignee is restrained by the terms of the act, no further than from recovering more than was due at the time of the assignment, it was properly held on principles of

(Jacob Frantz, for the use of John Garberich, *v.* Philip Brown.)

general equity, that being a purchaser for a valuable consideration, he is protected, by want of notice, from all acts of the original parties that do not affect either the *existence* or the *quantum* of the debt. But it was supposed, that all acts that can affect the *existence,* or the *quantum* of the debt, are necessarily referable to failure of consideration, or set off; the fallacy of which is shown by the present case. The defendant offered to prove that he became surety for *Frantz* to *Brechtbill,* on the faith of an assurance, that whatever he might be compelled to pay in consequence, should be credited on his own bonds to *Frantz.* Here there was something more than a contingent liability at the time of the assignment: so that it is obvious the question turns not on set off, but an equity distinct from it. Set off, itself, was originally nothing more than an equitable defence, which the legislature has thought fit, in plain and simple cases, to subject to the jurisdiction of the courts of common law, reserving to chancery, its original jurisdiction of cross demands, which do not fall within the statute. That such a statute should have been thought necessary here, where the jurisdiction of the courts is compounded of law and equity, is attributable to the unsettled state of the practice at the time. As their equitable jurisdiction is now settled, and universally understood, the courts would be competent to do complete justice, without the statute, as is shown by their having frequently gone beyond it; an instance of which is found in *Childerston* v. *Hammon,* 9 *Serg. & Rawle,* 68, where the defendants were permitted to defalcate a debt due to one of them, although the terms of the act are applicable only to cases, where a balance may be found in favour of the party pleading the set off, and viewing such a plea as a cross action, it certainly ought not to be maintained, so far as to produce a balance, by two for a debt due but to one. Set off then being out of the question, was there an equity arising from something in addition to a contingent liability, at the time of the assignment? There was an express appropriation of the money to become due on the defendant's bonds to indemnify him from loss, as surety for *Frantz,* which might undoubtedly be set up against *Frantz,* or an assignee having notice of the fact. But the assignee is bound to take notice of every thing, as well a secret trust as want of consideration or set off, which may affect the existence of the debt between the original parties, unless the obligor, after inquiry made, has withheld the requisite information. What would have been the answer to the proper inquiry here? Certainly not, that the bonds were payable at all events, but that the obligee held them subject to an agreement to indemnify the obligor for whatever he should be compelled to pay for the obligee. In *Davis* v. *Barr,* the agreement being collateral to the existence of the debt, and there being nothing in the enquiry which the assignee was bound to make, to lead the obligor to the subject, the latter might with good faith, have admitted the

(Jacob Frantz, for the use of John Garberich, *v.* Philip Brown.)

debt, and yet been silent on the subject of the agreement; so that an enquiry about the only thing which the assignee is bound by the terms of the act of assembly to suspect, not being necessarily productive of information, in regard to the fact with which it was attempted to affect him, it was held that for neglecting to make the usual enquiry, he was not to be visited with notice of circumstances, to which it would not have led. Perhaps there will be rarely, if ever, a case to which the principle of that decision will be applicable. In the case at bar, the assignee was bound to enquire into every circumstance that might be set up against payment of any part of the debt, and having failed to do so, he stands exactly in the place of the obligee. As therefore chancery would enjoin *Frantz*, or his assignee, from proceeding at law, while the defendant remains a loser, or in jeopardy as a surety, the evidence is admissible to enable a jury to produce the same *result*, by means of a conditional verdict.

Judgment reversed, and a new trial awarded.

Rogers J. and Ross J. took no part in the decision; not having heard the argument.